Springfield Iron Co. v. Gould.

## THE SPRINGFIELD IRON COMPANY
### v.
## PHILIP A. GOULD.

1. MASTER AND SERVANT—INJURIES TO SERVANT.—A master is liable to a servant for injuries received by him while in his employ, only when he fails to employ reasonably skillful workmen or suitable machinery and implements, properly constructed for the use intended and of proper material.

2. MASTER NOT AN INSURER.—A master is not an insurer that the workmen he employs are skillful and prudent, or that the workmanship and materials used in the construction of machinery are absolutely proper and suitable.

3. SERVANT ASSUMES RISKS OF THE SERVICE.—A servant when he enters an employment assumes the risk of the ordinary hazards of such employment, whether from the carelessness of fellow-servants, latent defects in, or the ordinary dangers of the use of the machinery employed in the business.

4. NEGLIGENCE OF SERVANT.—A master can not be made liable for an injury caused by the servant's own negligence, or that of his fellow-servants in the same line of business.

APPEAL from the Circuit Court of Sangamon county; the Hon. C. S. ZANE, Judge, presiding. Opinion filed October 24, 1882.

Messrs. STUART, EDWARDS & BROWN, and Mr. FRED E. SMITH, for appellant; that an improper instruction is not cured by an accurate one, cited Wabash Ry. Co. v. Henks, 91 Ill. 414; Ill. Cent. R. R. Co. v. Maffitt, 67 Ill. 431.

An instruction assuming to state the whole evidence must state fully all that need to be proved: St. L. & S. E. Ry. Co. v. Britz, 72 Ill. 261; C. B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; Evans v. George, 80 Ill. 51; Ogden v. Kirby, 79 Ill. 556; Cushman v. Cogwell, 86 Ill. 66; I. C. & N. W. R. R. Co. v. Dunnick, 96 Ill. 47.

If plaintiff needlessly describe the tort, he must prove it as laid: 1 Chitty's Pl. 265; Stephen on Pl. 85; 1 Greenleaf's Ev. § 65; Starkie's Ev. 377.

As to the liability of a master, and that he is not an insurer: C. C. & I. C. R. R. Co. v. Troesch, 68 Ill. 548; N. C. Rolling Mills Co. v. Monka, 4 Bradwell, 664; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417.

As to the risks assumed by the servant: Wharton on Negligence, § 214; Ill. Cent. R. R. Co. v. Jewell, 46 Ill. 99; Wright v. N. C. R. R. Co. 25 N. Y. 564; Hayes v. West. Trans. Co. 3 Cush. 270; Richardson v. Cooper, 88 Ill. 275; St. L. & S. E. Ry. Co. v. Britz, 72 Ill. 261.

Plaintiff can recover only a fair compensation for the injury: Armsworth v. S. E. R. R. Co. 11 Jur. 758; Ronley v. London R. R. Co. 8 Exch. 230.

Messrs. PALMERS, ROBINSON & SHUTT, for appellee; cited I. B. & W. Ry. Co. v. Toy, 91 Ill. 474; Fairbanks v. Haentzsche, 73 Ill. 236.

DAVIS, P. J. This was an action on the case, brought by appellee to recover damages for personal injuries caused, as alleged, by the negligence of appellant.

Appellee was engaged by the Springfield Iron Company as

weigh master in its steel department, and his duties were to assist in loading steel ingots, weighing and keeping a record of them, removing them as they accumulated in the steel works, and also in removing "messes" as they were formed, into the yard to be broken.

In discharging his duties, it became necessary to remove one of these "messes" which had been formed in the process of making steel ingots for making steel rails. Sometimes, the result of divers causes, there would be brought about what is called a "mess," that is, the steel would not be of a proper heat to run into steel ingots. A large quantity of molten steel, instead of running into the molds, could not be got to run there, and consequently the workmen were compelled to let it run upon the ground, forming this "mess." It was the duty of Gould to have this "mess" loaded on what is called a buggy and removed into the yard to be broken up, so that it could be put into the furnace and melted again.

On the day of the accident one of these "messes" had formed, and appellee and his four assistants were working to remove it. The "mess" was hoisted to the buggy by means of a crane which was operated by hydraulic power. To this crane is attached a chain which forms part and parcel of the crane, and is machinery kept for the purpose, to circle the piece of iron or whatever is to be lifted, and then to be connected with the chain belonging to the crane with hooks. This had been done, that is, appellee had put the chain around, and had got a hook and had lifted the "mess," but found it was larger than the door and would not go through, and it became necessary to lower it and put it in a different position, edgewise, to see if it would go through in that way; and when they had hoisted it to the proper height, which was the height of the buggy, and were engaged in swinging it around to the proper place, the hook with which the chain around the "mess" was fastened to the chain which forms a part and parcel of the crane, broke. One of the links of the chain had broken a few minutes before and had struck appellee in the chest, but on this occasion it was the hook

connecting the two chains which broke—a hook supplied for the purpose of connecting the chains.

When appellee heard the hook snap he leaped, but did not look where he was jumping. There were two iron rails lying crosswise on the ground. He jumped clear of the "mess" about eight feet, and was that distance from where the "mess" fell, but in jumping he jumped between the two rails, and when the "mess" fell it pitched onto the end of one of the rails, causing it to swerve, and the two rails, acting as shears, cut off his foot, or a portion of it.

Appellee, in the first count of his declaration, charges, and bases his right to a recovery, on the ground that the hook or link used in moving, lifting and loading the mass of steel was so improperly and defectively made, and of such improper, imperfect and unsuitable material and workmanship, that when appellee and the other servants of appellant were, with due and proper care and diligence, engaged in lifting, loading and moving the said mass or piece of steel, the said hook or link, from mere defectiveness and unsuitableness, and without the neglect or default of appellee, or of the other servants or employes of appellant engaged with appellee, broke, and caused the said mass or piece of steel to fall upon certain iron rails of appellant, causing them to swerve and catch hold and crush, and wholly ruin and destroy the left foot of appellee.

In the second count of the declaration appellee charges that it was the duty of appellant to furnish good and sufficient chains, links, hooks and other implements of proper, safe and sufficient materials and workmanship, and also to keep the said ground and floor of said building or shop where the said mass or piece of steel was found, and from and over which it was to be lifted, hoisted and removed, clear and free from all iron rails, bars or other obstructions, so that in case any of such chains, hooks, links or other implements by appellant furnished, should casually and accidentally break or become unfastened and the said mass or piece of steel should, after being lifted, fall to the ground to the danger of appellee, he might in the exercise of due care and diligence for his own safety and protection from injury, escape without obstruction or injury.

That appellant did not regard its duty, but on the contrary did not furnish or provide appellee and the other servants and employes with good chains, hooks, links or other implements made of proper, safe and sufficient materials and of proper workmanship; nor did it keep the said ground and floor of said shop or building clear and free from all iron rails, bars and other obstructions, but on the contrary a certain hook or link so negligently and carelessly furnished by appellant, from mere insufficiency and unsuitableness and from defects in its material and workmanship, broke, and the said mass became loosened and fell to the ground or floor of said shop upon certain iron rails or bars which appellant wrongfully and negli_gently suffered and permitted to be, so that when the mass of steel fell, the iron rails swerved, and were forced together and caught the foot of appellee and crushed the same.

One ground of complaint in this case, on which a recovery is claimed, is that the tools furnished appellee and his fellow workmen by appellant were improperly and defectively made and were of improper, imperfect and unsuitable material and workmanship.   No evidence was furnished by appellee to sustain this charge.   It is true that the hook or link used, in the endeavor to raise the heavy mass of steel, broke, and the heavy mass fell to the ground, but the heavy preponderance of the evidence is, that the hook which broke was made of the best material, the metal used being first class, and was made by an experienced workman and was properly made.

In Richardson v. Cooper, 88 Ill. 273, Mr. Justice Walker, speaking for the court says: "The rule is well recognized that the employer is only liable where he fails to employ reasonably skillful workmen or suitable machinery and implements, properly constructed for the use intended, and of proper material; the master is not an insurer that the servants he employs are skillful and prudent, or that the workmanship or materials employed in the construction of machinery and other implements are absolutely proper and suitable, but he is bound to a high degree of care and skill in their selection or construction.   A servant when he engages in an employment is held to have done so with a knowledge of the risk of

its ordinary hazards, whether from the carelessness of fellow servants in the same line of employment or from latent defects in, or the ordinary dangers in the use of, machinery and appliances used in the business. The qualification to the rule is, that the master must use all reasonable precautions to select capable and prudent fellow servants and machinery, and implements properly constructed and of good material." To the same effect is Chicago & Alton Railroad Company v. Mahoney, 4 Bradwell, 262.

The other ground of complaint on which a recovery is claimed, in addition to the alleged defective quality of the tools in material and workmanship, is that appellant did not keep the ground and floor of its shop on building clear and free from iron rails, bars and other obstructions whereby when the said hook as alleged, so negligently and carelessly furnished by appellant, from mere insufficiency and unsuitableness and from defects in its material and workmanship, broke, the said mass became loosened and fell to the ground upon the iron rails, which swerved and were forced together and caught the foot of appellee and crushed the same.

The evidence shows that the iron rails which were on the ground at the time the accident happened, were frequently used by appellee and his fellow workmen as skids in letting down from the gallery masses of molten metal. They were brought when needed for this purpose from another part of the works and were generally removed. These rails had been used the day before and had been brought in to remove the piece of steel which had been cut out of one of the furnaces and could not be removed from the gallery without the assistance of two rails to act as a skid. The rails were fixed and the steel was allowed to slide down to the floor where appellee was, and after that had been done they were thrown down and allowed to remain there, not being needed for any other purpose. They were removed directly after the accident happened.

It seems to us that as the rails were brought in by appellee and his fellow servants to carry on a part of their ordinary work, it was their duty to remove them when no longer required for their purposes. Appellee had permitted the rails to

remain on the ground where they had been thrown after use, from the day before until after the accident happened, and surely if blame or negligence can attach to any one, it can only attach to those who carelessly and negligently placed the rails in a position where they would be dangerous, and permitted them to remain there until one of their own number was seriously hurt. The master can not be held liable for an injury caused by a servant's own negligence or the negligence of his fellow servants engaged in the same line of employment. Chicago & N. W. R. R. Co. v. Moranda, 93 Ill. 302.

The court below erred in not granting appellant a new trial and for this error the judgment must be reversed and the cause remanded.

Judgment reversed.